THE GRAVES FIRM
ALLEN GRAVES (SB#204580)
allen@gravesfirm.com
JACQUELINE TREU (SB#247927)
jacqueline@gravesfirm.com
122 N. Baldwin Ave., Main Floor
Sierra Madre, CA  91024
Telephone: (626) 240-0575
Facsimile: (626) 737-7013

Attorneys for Plaintiff
Mordechai Avisar

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mordechai Avisar, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Surgical Theater, Inc., Wen-Chi Chen and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | CASE NO.: 8:23-cv-00211-JWH(ADSx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **Whistleblower Retaliation in Violation of Labor Code §1102.5;**<br>2. **Retaliation in Violation of Labor Code §232.5;**<br>3. **Wrongful Termination in Violation of Public Policy;**<br>4. **Intentional Interference with Prospective Economic Advantage;**<br>5. **Conversion;**<br>6. **For Penalties Pursuant to California Penal Code 496; and**<br>7. **Breach of Bailment.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Mordechai Avisar ("Plaintiff") alleges as follows:

## INTRODUCTION

1.  Plaintiff Mordechai Avisar brings this Complaint to recover damages that are owed to him by Defendant Surgical Theater, Inc. ("Defendant"), as a result of Defendant Surgical Theater, Inc.'s violations of California law prohibiting retaliation against whistleblowers (California Labor Code §1102.5), for wrongful termination in violation of public policy, and for conversion and breach of bailment. Plaintiff also brings the Fourth Cause of Action in this Complaint, for intentional interference with contract, to recover damages owed to him by Defendant Wen-Chi Chen. Plaintiff seeks damages in this lawsuit in excess of $18 million.

## THE PARTIES

2.  Plaintiff Mordechai Avisar ("Avisar" or "Plaintiff") is a citizen of the United States and a citizen and resident of Miami Beach, Florida. Until in or around August 2022, Avisar was the Chief Executive Officer of Defendant Surgical Theater, Inc. During his employment with Surgical Theater, Inc., Plaintiff maintained a residence first in Los Angeles County, California, and later in Orange County, California. Plaintiff routinely performed work for Surgical Theater at these residences. At the time of his termination, Avisar regularly worked in Los Angeles and Orange County, California. Plaintiff's work included both working from his residences and working in company offices, as well as the Surgical Theater manufacturing facility located in Los Angeles County.

3.  Defendant Surgical Theater, Inc., produces and globally distributes a three-dimensional advanced visualization and image guidance platform for brain surgery and patient consultation. Surgical Theater products have been deployed in clinical settings at multiple hospitals including UCLA Medical Center, UCSF Medical Center, and Stanford Hospital.

4.      Defendant Surgical Theater, Inc. is a corporation organized under the laws of Delaware and located in Ohio.  Until the summer of 2022, Surgical Theater maintained a California headquarters office in Los Angeles, California.  During the time that Surgical Theater conducted in-person board meetings, the Los Angeles office was a regular site for board meetings.  Plaintiff negotiated the terms of his employment in the Los Angeles office.  Surgical Theater's manufacturing facility also operated in Los Angeles from 2016 through the summer of 2022.  Several of Surgical Theater's senior officers also reside or resided in Southern California through the summer of 2022.  Since 2019 and continuing to the present, Surgical Theater's primary clinical research and development work takes place on the campus of Hoag Hospital in Orange County, California.

5.      At all times relevant herein, Defendant Wen-Chi Chen ("Chen") has been a director on the board of directors of HTC Corporation and the chairman of the board of directors of Surgical Theater, Inc.  Chen is also on the board of trustees of the California Institute of Technology ("Cal Tech"), and has extensive ties to the University of California at Berkeley.  Chen also serves as the chairman and CEO of VIA Technologies, Inc., which was founded and continues to perform business in California.  Chen also controls Kun Hung, a personal money management firm that manages Chen's own funds.  Kun Hung has profited from dealings with Surgical Theater to the detriment of Surgical Theater.

6.      Plaintiff is currently unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10 (the "Doe Defendants"), and therefore sues the Doe Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of the Doe Defendants when they are ascertained.

7.      Plaintiff is informed and believes, and thereon alleges, that the Doe Defendants are the partners, agents, principals or co-conspirators of the named Defendants and of each other; that the named Defendants and the Doe Defendants performed the acts and conduct herein alleged directly, aided and abetted the performance thereof, or

1  knowingly acquiesced in and accepted the benefits of such conduct, and therefore each Doe Defendant is liable to the extent of the liability of the named Defendants.

8.  Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, each of the Defendants was the agent, servant, and/or employee of each of the other Defendants and, in connection with the matters hereinafter alleged, was acting within the scope of such agency and employment, and each Defendant ratified each and every act, omission and thing done by each and every other Defendant herein.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction in this action because: Defendants committed violations of California law that affected Plaintiff in this state, because the cause of action arose in California, and because service was effected on Defendants while they were voluntarily present in California.

10. Venue is proper under California Code of Civil Procedure §393, as this is the county in which the cause arose; and under Section 395, as this is the county in which the injury occurred, and none of the defendants reside in the State of California.

11. Defendant Surgical Theater removed this matter from the Superior Court of California to the above-captioned Court on February 2, 2023 pursuant to 28 U.S.C. §1332(a), on the basis of diversity of citizenship between Plaintiff and Defendants.

## GENERAL ALLEGATIONS

12. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 11 hereof, inclusive.

13. Plaintiff co-founded Surgical Theater in 2010, and served as the CEO from that time until approximately August 2022.

14. Surgical Theater's largest shareholder is HTC Corporation ("HTC"). With regards to Surgical Theater, HTC is represented by Defendant Wen-Chi Chen ("Chen").

15. In or around 2017, HTC, through Chen, entered into an exclusive distribution agreement with Surgical Theater. Under this agreement, HTC would have the exclusive rights to market and distribute Surgical Theater's products in East Asia.

16. As an equity investor in Surgical Theater, and after gaining board seats and becoming the chairman of the Surgical Theater Board of Directors, Chen began taking actions aimed at promoting his own interests and the interests of HTC at the expense of Surgical Theater shareholders. Chen stated on multiple occasions that he put his own best interests and the interests of HTC above the interests of Surgical Theater.

17. Chen bargained for HTC to acquire exclusive rights to market and distribute Surgical Theater products in the East Asia territory. Chen also forced Surgical Theater to grant HTC a 2-year option to acquire Surgical Theater's intellectual property in East Asia.

18. Having obtained exclusive rights to the marketing and distribution of Surgical Theater products in East Asia, HTC, acting at Chen's direction, refrained from generating any sales of revenue in the East Asian territory. The fact that zero dollars were generated in East Asia over the period of seven years was remarkable, as Surgical Theater had generated at least $30 million in revenue globally over the previous few years.

19. This conduct by Chen caused significant damage to Surgical Theater in lost revenue. Plaintiff is informed and believes that Surgical Theater's value would have been three times higher had Chen directed and permitted HTC to follow through with its obligation to market and sell Surgical Theater's products in East Asia. In addition to the damages caused to Surgical Theater's shareholders, Chen's conduct also significantly impacted Surgical Theater employees, such as Plaintiff, who were entitled to receive bonuses associated with the company's revenue, and whose bonuses were negatively affected by Chen and HTC's failure to generate any revenue in East Asia.

20. After more than six years passed with HTC having generated no sales or revenue in the East Asian territory, HTC's option to acquire Surgical Theater's intellectual property in East Asia expired. Despite this fact, Chen and HTC worked to extend the exclusive agreement in order to thereby block any possibility of sales or

revenue from the East Asian territory. Chen continued to advance this position, to the determent of Surgical Theater shareholders, even after the board of Surgical Theater concluded that the exclusive agreement with HTC had expired. Chen undertook this strategy specifically to depress the value of Surgical Theater so that he could acquire additional ownership interest more cheaply.

21. During 2021 and 2022, Chen deliberately created a cash shortage at Surgical Theater by failing to keep promises regarding provision of an additional cash infusion to the company.

22. Having created a situation in which Surgical Theater faced a real risk of being unable to meet payroll expenses (including payroll for employees in California for which the company nearly defaulted), Chen offered Surgical Theater a $250,000 loan to cover payroll, in exchange for a warranty with approximate value of $10 million from Surgical Theater. Chen also demanded that Surgical Theater take responsibility (in lieu of HTC) for the failure to generate sales and revenue in East Asia. Chen's actions in this regard constituted self-dealing, as Chen sought to benefit from a crisis at the expense of shareholders and to communicate false information to shareholders with regard to the reason for the failure to generate sales and revenue in East Asia.

23. Plaintiff is informed, believes, and thereupon alleges that one or more Surgical Theater board members, guided by Chen, instructed management to manipulate the shareholder report presented at a September 2022 shareholder meeting so as to misrepresent the revenue numbers for 2021. The inaccurate report stated $6 million in company revenue instead of the $9 million shown on the company reports. Chen took this action in order to set a value for the company that was significantly lower than the fair market value that was determined by the company's retained investment bankers.

24. Having worked to depress the value of Surgical Theater, Chen made multiple offers for the acquisition of Surgical Theater that contradicted, and were significantly lower than, the valuation provided by the company's retained investment banker consultants.

25. In 2022, Plaintiff received information that alleged that Chen, and VIA Technologies, Inc., for which Chen served as Chairman and CEO, were ordered in Hong Kong and Taiwanese arbitrations to pay millions of dollars for manufacturing computer chips with hidden backdoor vulnerabilities purportedly to allow the Chinese Communist Party illicit access to information by using the chips. Plaintiff also learned that Chen, VIA, and HTC were alleged to have ties to Libya.

26. Hong Kong and Taiwan are part of the East Asia territory for which HTC was granted exclusive marketing and distribution rights by Surgical Theater.

27. Chen and HTC never disclosed the Hong Kong/Taiwanese arbitrations or their findings to the board or shareholders of Surgical Theater. When confronted with the allegations regarding the arbitrations, as well as the ties to Libya and the Chinese Communist Party, Chen and HTC neither denied any of the allegations nor provided any evidence to counter these allegations.

28. Learning of these allegations was deeply concerning to Plaintiff, who reasonably believed that Chen and HTC fraudulently concealed this information from Surgical Theater in order to induce Surgical Theater into doing business with Chen and HTC.

29. Plaintiff reasonably believed that Chen breached his fiduciary duties to Surgical Theater in self-dealing rather than acting in the best interests of Surgical Theater.

30. The findings of the Taiwanese arbitrations were material to Surgical Theater because Surgical Theater's business involves the handling and processing of confidential medical records. As a medical device company with strict obligations to comply with regulations from the FDA as well as HIPAA, it was against Surgical Theater's interest to be affiliated with the conduct alleged against Chen and HTC. The allegations that a substantial owner and the Chairman of the Board of Surgical Theater was found to have deliberately cooperated with the theft of data would adversely affect the ability of Surgical Theater to attract and maintain customers.

-7-

FIRST AMENDED COMPLAINT

31. Surgical Theater had retained a consultant regarding potential business with the Department of Defense, retired general Elder Granger. In August 2022, after learning about the allegations surrounding Chen and HTC regarding the chip backdoor issue, Granger informed Plaintiff that he was cutting all ties with Surgical Theater as long as Surgical Theater remained affiliated with Chen.

32. After Plaintiff raised the issue of the Taiwanese arbitrations and the involvement of Chen, HTC, and VIA to the board, Chen and HTC did not deny the allegations. Surgical Theater did not initiate an independent investigation into this issue.

33. On July 24, 2022, Plaintiff sent correspondence to Surgical Theater board member Noam Lotan, who was at that time Surgical Theater's designated recipient of whistleblower reports. This correspondence laid out the illegal and inappropriate conduct by Wen-Chi Chen discovered by Plaintiff.

34. On July 25, 2022, Plaintiff forwarded the information to the Surgical Theater board.

35. Shortly thereafter, during a meeting of the Surgical Theater board of directors, Plaintiff reiterated his concerns regarding HTC and Chen's activities and breach of fiduciary duties.

36. On or about September 9, 2022, Plaintiff communicated concerns to the board about the risk that HTC's and Chen's ownership interest in Surgical Theater could trigger investigation or action by the Committee on Foreign Investment in the United States ("CFIUS"). CFIUS is a government entity operating as part of the United States Department of the Treasury, pursuant to section 721 of the Defense Production Act of 1950 as amended. CFIUS has authority to investigate and in some cases prohibit certain business transactions involving foreign entities. Plaintiff specifically communicated his concern that HTC may have violated CFIUS requirements with regard to transactions involving Chen and HTC.

37. After Plaintiff's complaints, Chen stated that Plaintiff would have to "pay the price" for his complaints and opposition to Chen's self-dealing. Chen also said that

Plaintiff "will regret and need to apologize" for his complaints and opposition to Chen's self-dealing.

38. Defendant Surgical Theater terminated Plaintiff's employment during a board meeting on or around August 13, 2022. In doing so, Defendant Surgical Theater failed to comply with the company's bylaws, which set forth specific procedures required for termination of the Plaintiff. Specifically, Defendant Surgical Theater was expressly required by the bylaws to provide notice to the shareholders and call a shareholder meeting before voting to terminate Plaintiff's employment. Defendant failed to do so.

## FIRST CAUSE OF ACTION

### (Whistleblower Retaliation – Cal. Lab. Code §1102.5

### Against Surgical Theater)

39. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 38 hereof, inclusive.

40. California Labor Code §1102.5 precludes an employer from taking any adverse action against an employee in retaliation for disclosing, to a person with authority, information that the employee has reasonable cause to believe shows a violation of law.

41. Here, Plaintiff made direct disclosures to the board of Surgical Theater, as well as to Surgical Theater's designated recipient of whistleblower complaints, about events he had good reason to believe constituted illegal breaches of fiduciary duty and fraud perpetrated by Wen-Chi Chen and HTC.

42. Plaintiff reasonably believed that the conduct he reported to the board of directors constituted illegal breaches of fiduciary duty, and fraud.

43. Defendant Surgical Theater terminated Plaintiff mere weeks after Plaintiff's reports to the board of directors, and after more than 12 years of Plaintiff's service as CEO of Surgical Theater.

44. Plaintiff believes, and thereon alleges, that Surgical Theater terminated his employment because of Plaintiff's reports to the Board of Directors regarding the activities of board member Wen-Chi Chen and HTC, in violation of California Labor Code §1102.5.

45. As a direct and proximate result of Defendant Surgical Theater's retaliation against Plaintiff, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, lost front wages and lost benefits.

46. At all times described herein, Defendant Surgical Theater has acted willfully and deliberately with oppression, fraud and malice in retaliating against Plaintiff and depriving him of the employment benefits to which he is entitled.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of Labor Code §232.5
### Against Surgical Theater)

47. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 46 hereof, inclusive.

48. California Labor Code §232.5 precludes an employer from retaliating against an employee for the employee's disclosure of information about the working conditions provided by the employer.

49. Here, Plaintiff made direct disclosures to Surgical Theater's board of directors concerning his working conditions – i.e., attempting to perform his role as the CEO of Surgical Theater – while HTC and Chen were attempting to loot the company from the inside; the difficulties caused by Chen's actions reducing revenue and cash flow to the company; and the fact that at least one of Surgical Theater's Department of Defense contacts had cut all ties with the company on the basis of Chen's alleged involvement with the Chinese Communist Party and the VIA chip backdoor issue.

50. Almost immediately after raising these concerns, and despite the fact that Plaintiff was the co-founder of and had served as CEO of Surgical Theater for 12 years, Defendant Surgical Theater terminated Plaintiff's employment.

51. Plaintiff believes, and thereon alleges, that Defendant Surgical Theater terminated his employment because of Plaintiff's reports to the Board of Directors regarding his working conditions, in violation of California Labor Code §232.5.

52. As a direct and proximate result of Defendant Surgical Theater's retaliation against Plaintiff, Plaintiff has suffered, and will continue to suffer damages, including, but not limited to) lost front wages and lost benefits.

53. At all times described herein, Defendant Surgical Theater has acted willfully and deliberately with oppression, fraud and malice in retaliating against Plaintiff and depriving him of the employment benefits to which he is entitled.

### THIRD CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy**

**Against Surgical Theater)**

54. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 53 hereof, inclusive.

55. Defendant Surgical Theater terminated Plaintiff's employment in violation of well-established public policies in California. Specifically, Plaintiff's termination violated California's policy prohibiting employer retaliation against whistleblower employees, as codified in California Labor Code §1102.5 et seq., and California's policy prohibiting employer retaliation against employees who disclose their working conditions, as codified in California Labor Code §232.5.

56. As a direct and proximate result of Defendant Surgical Theater's wrongful termination of Plaintiff, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, lost front wages and lost benefits.

57. At all times described herein, Defendant Surgical Theater has acted willfully and deliberately with oppression, fraud and malice in retaliating against Plaintiff and depriving him of the employment benefits to which he is entitled.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Relations Against Wen-Chi Chen)

58. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 57 hereof, inclusive.

59. Plaintiff had an ongoing employment relationship with Surgical Theater, and had a reasonable expectation and probability of receiving continuing and future economic benefit from his ongoing employment.

60. Plaintiff substantially performed his employment obligations.

61. Defendant Wen-Chi Chen was, at all times relevant hereto, aware of Plaintiff's employment relationship with Surgical Theater. Chen personally negotiated and approved the compensation packages for Plaintiff's employment.

62. As a result of Plaintiff's whistleblowing activities reporting alleged illegal and unethical conduct of Wen-Chi Chen and HTC, Chen, in order to benefit HTC and also himself personally, intentionally caused a disruption of the economic relationship between Plaintiff and Surgical Theater by deliberately inducing Surgical Theater to terminate Plaintiff's employment.

63. Chen affirmatively voted to terminate Plaintiff's employment.

64. In order to further HTC's business interests, as well as his own personal interests, Chen actively, and personally on behalf of himself and HTC, induced the board members of Surgical Theater to terminate Plaintiff's employment, by, among other things:

    a. Telling board members that Chen and HTC would stop funding Surgical Theater if Plaintiff did not stop reporting Chen/HTC's wrongdoings and conflicts of interest;

    b. Creating a cash crisis by breaching previous funding promises, and then misrepresenting to Surgical Theater board members that payroll problems were Plaintiff's fault, when in fact what Plaintiff did was refuse to accept a predatory loan from HTC;

    c. Attempting to prevent Plaintiff from speaking at a Surgical Theater board meeting that Plaintiff himself initiated to discuss the Hong Kong/Taiwan arbitration issue with the board;

    d. Insisting to the Surgical Theater board that the Hong Kong/Taiwan arbitration issue was a "personal" matter between Chen and Plaintiff, and, on information and belief, giving the board an ultimatum that if the board did not terminate Plaintiff's employment, HTC and/or Kun Hung would pull funding from Surgical Theater; and

    e. While Avisar was still employed at Surgical Theater, Chen instructed the Board of Directors to retain an attorney in order to file Chapter 11 bankruptcy, ostensibly as a result of the cash shortage that Chen himself had created. Chen used this deliberately-created crisis to pressure board members to terminate Plaintiff. After Plaintiff was terminated, Chen then offered to provide additional cash as part of the Convertible Loan Agreement described in more detail below.

65. During board meetings, and while committing the conduct noted above, Chen repeatedly and expressly disclaimed his role and duties as Surgical Theater's chairman, and expressed that he was instead concerned about HTC's interests.

66. Chen's conduct in inducing Surgical Theater to terminate Plaintiff's employment was independently wrongful. Specifically:

    a. Defendant Chen breached his fiduciary duties and duty of loyalty as the Chairman and a board member of Surgical Theater by voting to terminate Plaintiff's employment, and by inducing Surgical Theater to terminate Plaintiff's employment, as this action was designed to remove Plaintiff as an

impediment to the Chen's ongoing campaign of sabotage of Surgical Theater for Chen and HTC's benefit.

b. Defendant Chen's inducement of Surgical Theater to terminate Plaintiff's employment constituted ongoing fraud on Surgical Theater, through an attempt to continue concealing HTC's and Chen's misconduct from Surgical Theater shareholders. The conduct that Chen sought to conceal by inducing the termination of Plaintiff included: 1) Chen's and HTC's ties to the Chinese Communist Party; 2) alleged activity by HTC and VIA related to the illicit access to information; 3) HTC's alleged ties to Libya; 4) Chen and HTC's failure to execute its obligations to promote and sell Surgical Theater products under the exclusive distribution agreement awarded to HTC by Surgical Theater; and 5) continued self-dealing by Chen and HTC. For instance, Chen, acting through his personal money management firm, Kun Hung, entered into a Convertible Loan Agreement ("CLA") with Surgical Theater. Despite the fact that the CLA contains an equity conversion provision, the agreement also requires Surgical Theater to record three times the actual loan amount as being owed to Kun Hung. Surgical Theater has to date drawn $6 million from the CLA, and is required to record a debt of $18 million, to the detriment of Surgical Theater shareholders. Defendant Chen deliberately withheld from shareholders that Kun Hung is a captive entity that benefits Chen directly and personally; and has deliberately concealed his conflict of interest from the shareholders, as well as the fact that Defendant Chen is personally receiving a substantial and non-customary financial gain from the CLA deal.

c. Defendant Chen induced the termination of Plaintiff specifically to facilitate improper self-dealing to benefit Chen at the expense of Surgical Theater shareholders. For example, Plaintiff repeatedly rejected Defendant Chen's offers for transactions with unfavorable terms similar to the loan described

-14-
FIRST AMENDED COMPLAINT

above, given the unfavorable terms to Surgical Theater and the cost to Surgical Theater shareholders. Defendant Chen induced the board of Surgical Theater to terminate Plaintiff in order to get the loan approved.

67. At all times described herein, Chen acted willfully and deliberately with oppression, fraud and malice in disrupting Plaintiff's employment relationship with Surgical Theater, and depriving Plaintiff of the compensation and benefits to which he was entitled pursuant to such relationship.

## FIFTH CAUSE OF ACTION
### (Conversion
### Against Surgical Theater)

68. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 67 hereof, inclusive.

69. During the course of his employment, Plaintiff resided for a period of time in housing owned by Defendant Surgical Theater.

70. During his period of residence, Plaintiff maintained personal possessions in that housing with a total value of at least $48,000. This property consisted of, inter alia, clothing, jewelry, personal effects, recording equipment, and other items.

71. Defendant Surgical Theater ceased maintaining the housing unit for its employees, and moved Plaintiff's personal property to a storage unit owned by Surgical Theater.

72. When Surgical Theater terminated Plaintiff's employment, the company also terminated the storage unit lease, but sent only a small portion of Plaintiff's belongings back to him. The vast majority, and the more valuable, of Plaintiff's property that had been housed in the storage unit was not returned to Plaintiff and was nowhere to be found.

73. Plaintiff's multiple inquiries to Defendant Surgical Theater as to the whereabouts of his property were met with silence.

74. Plaintiff at all times relevant herein had a property right to the personal property identified herein.

75. Defendant Surgical Theater does not have, and at no time had, any property interest in the personal property of the Plaintiff identified herein.

76. Defendant Surgical Theater intentionally and substantially interfered with Plaintiff's property by misappropriating the property for its own use and benefit, preventing Plaintiff from having access to the property, and refusing to return the property to Plaintiff.

77. Plaintiff did not consent in any manner to Surgical Theater taking his personal property for Surgical Theater's own use, or to Surgical Theater's disposing of his personal property in any other fashion.

78. Defendant Surgical Theater has not returned the property to Plaintiff, nor has Surgical Theater provided Plaintiff with any funds as recompense for the property Surgical Theater converted from Plaintiff.

79. Plaintiff has been damaged in amount to be proven at trial, as a direct and proximate result of Defendant Surgical Theater's actions in converting and misappropriating his personal property.

### SIXTH CAUSE OF ACTION
**(Violation of Penal Code §496**
**Against Surgical Theater)**

80. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 79 hereof, inclusive.

81. California Penal Code §496(c) provides that "any person who has been injured by a violation" of Penal Code §496(a) may bring an action for three times the amount of actual damages, costs of suit, and reasonable attorneys' fees.

82. Section 496(a) prohibits individuals from concealing, selling, withholding or aiding in concealing, selling, or withholding any property from the owner of the property, where such property was stolen or unlawfully obtained from the owner.

83. Defendant Surgical Theater violated section 496(a) by knowingly concealing and withholding Plaintiff's personal property from him, after having unlawfully misappropriated that property.

84. Plaintiff has been injured by Defendant Surgical Theater's violation of Penal Code §496(a) in an amount to be determined at trial, but in no event less than $48,000 plus interest at the legal rate. Accordingly, Plaintiff is entitled to treble damages, costs of suit, and reasonable attorneys' fees pursuant to section 496(c).

## SEVENTH CAUSE OF ACTION

### (Breach of Bailment

### Against Surgical Theater)

85. Plaintiff realleges and incorporates herein by this reference the allegations of Paragraphs 1 through 84 hereof, inclusive.

86. Defendant Surgical Theater, by deliberately taking possession of Plaintiff's personal property as described herein and placing it into Surgical Theater's storage unit, became a bailor of Plaintiff's property.

87. As a result of this bailment, Defendant Surgical Theater owed a duty to Plaintiff to exercise ordinary care in maintaining Plaintiff's property.

88. Defendant Surgical Theater breached this duty and instead misappropriated or disposed of Plaintiff's property, interfering with Plaintiff's enjoyment and use of his own property and preventing Plaintiff from regaining his property.

89. Defendant Surgical Theater's breach of this duty proximately caused damages to Plaintiff in an amount not less than $48,000.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants Surgical Theater, Inc., Wen-Chi Chen and DOES 1 through 10, inclusive, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION:**

1. For damages according to proof, including front pay and benefits;
2. For attorney fees and costs reasonably incurred, in accordance with California Labor Code §1102.5(j);
3. For interest pursuant to Civil Code §3287; and
4. For punitive damages.

**ON THE SECOND CAUSE OF ACTION:**

1. For damages according to proof, including front pay and benefits;
2. For interest pursuant to Civil Code §3287; and
3. For punitive damages.

**ON THE THIRD CAUSE OF ACTION:**

1. For damages according to proof, including front pay and benefits;
2. For interest pursuant to Civil Code §3287; and
3. For punitive damages.

**ON THE FOURTH CAUSE OF ACTION:**

1. For damages according to proof, including front pay and benefits;
2. For interest pursuant to Civil Code §3287; and
3. For punitive damages.

**ON THE FIFTH CAUSE OF ACTION:**

1. For damages according to proof; and
2. For interest pursuant to Civil Code §3287.

**ON THE SIXTH CAUSE OF ACTION:**

1. For damages according to proof;
2. For treble damages pursuant to Penal Code §496(c);
3. For attorney fees and costs, in accordance with Penal Code 496(c); and
4. For interest pursuant to Civil Code §3287.

**ON THE SEVENTH CAUSE OF ACTION:**

1. For damages according to proof; and
2. For interest pursuant to Civil Code §3287.

**ON ALL CAUSES OF ACTION:**

1. For costs of suit, to the extent not otherwise prayed for above;
2. For attorney fees to the extent not otherwise prayed for above;
3. For interest on amounts recoverable; and
4. For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

DATED: June 12, 2023                THE GRAVES FIRM

By: _____
ALLEN GRAVES
Attorney for Plaintiff
Mordechai Avisar